Filed 7/18/16  P. v. Medlock CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B264486 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA425947) |
| v. | |
| GILES JERRY MEDLOCK, JR., | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Henry J. Hall, Judge.  Affirmed in part; reversed in part and remanded.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Giles Jerry Medlock, Jr., appeals from his conviction by jury of assault with a deadly weapon. He contends his conviction for assault is not supported by substantial evidence. Defendant also contends the court erred in finding that two of his out-of-state convictions qualified as serious or violent felonies under the "Three Strikes law" and Penal Code section 667, subdivision (a)(1). Defendant acknowledges the court was justified in imposing a Three Strikes sentence but asks us to reverse the imposition of two of the five-year enhancements. We reverse the five-year enhancements on two priors and remand for a limited retrial to determine if those priors qualify as serious or violent felonies under the Three Strikes law and section 667, subdivision (a)(1). We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of June 7, 2014, Ronald Christensen and defendant went to a laundromat near the intersection of Sunset Boulevard and Poinsettia Street in Hollywood. They were joined by a third man who was a friend of defendant's. All three men were homeless. Defendant agreed to pay for them to do some laundry together. Mr. Christensen stayed to do all of the laundry while defendant and his friend went back and forth to a nearby liquor store. At one point, defendant started yelling at Mr. Christensen that he was spending too much money on the laundry. He "came at" Mr. Christensen with a knife. Mr. Christensen was not armed.

Jericho Wilson was another patron in the laundromat that night. He was not acquainted with defendant, Mr. Christensen or the third man but he was aware of them because they were being loud, and all of them appeared to be intoxicated. Mr. Wilson noticed that Mr. Christensen appeared to be doing all of the laundry, while defendant and the other man kept going outside briefly and then returning. At one point, Mr. Wilson overheard defendant loudly complaining to Mr. Christensen about the way he was drying the clothes. Both defendant and Mr. Christensen appeared agitated with one another, so Mr. Wilson tried to move farther down the row of machines to complete his laundry. He then heard "blows landing" and turned to look. Mr. Wilson saw defendant and Mr. Christensen "grappling" with one another, their hands clenched in fists.

2

Mr. Wilson was frightened by the fighting, and did not focus on the two men the whole time, occasionally glancing away. After a few minutes, he heard Mr. Christensen say several times, "why did you pull a knife on me, man?" Mr. Christensen, holding his hands to his neck, started walking toward Mr. Wilson. He was "bleeding profusely." He had a wound to his neck, about three inches long. Mr. Wilson gave Mr. Christensen some napkins to apply to the wound, and another patron gave him a towel. During this time, defendant continued to go in and out of the laundromat. He appeared to still be quite angry. Defendant grabbed a laundry basket and threw it at Mr. Christensen. Mr. Christensen threw it back at him. Mr. Wilson called 911. Defendant left before the paramedics arrived.

When defendant was apprehended a few blocks away, two officers brought Mr. Wilson to the location, where he identified defendant as the person who had fought with and cut Mr. Christensen with a knife. Officer Martin Robles heard defendant say, "[y]eah, I'm the suspect. I cut him. I'll cut him and his mammy. Homosexual motherf---er hit me in the face. I was trying to kill him." During a search of defendant's person, a knife was located in one of his pockets which tested positive for Mr. Christensen's blood.

Defendant was charged with attempted murder(Pen. Code, §§ 187, subd. (a), 664; count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). It was alleged defendant used a deadly weapon (a knife) and inflicted great bodily injury on the victim in the commission of the offenses (§§ 12022, subd. (b)(1), 12022.7, subd. (a)). It was further alleged defendant had suffered four prior convictions for serious or violent felonies within the meaning of section 667, subdivision (a)(1) and the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (c)).

At trial, defendant testified in his own defense and said he did not mean to cut Mr. Christensen. He said he had agreed to pay for them to do their laundry together. Mr. Christensen kept asking for more money, and when defendant finally said no and "to hell with you," Mr. Christensen punched him in the face. The two fought for a few minutes, but Mr. Christensen is almost 20 years younger than defendant, so defendant was starting to tire out. Defendant said he feared for his life, because he knew

3

Mr. Christensen could be violent. He knew Mr. Christensen used methamphetamine and had kicked a girl in the face and had also been violent with someone from whom he was trying to buy drugs. Defendant kept a knife in his pocket for protection because he lived on the streets and it was dangerous. When he started to tire, defendant grabbed the knife from his pocket and kept punching with the blade protruding from the bottom of his fist. Defendant said he did not know he had cut Mr. Christensen, until his friend finally pulled the two of them apart. At that point, Mr. Christensen told defendant he was going "to get him" so defendant fled the laundromat. He feared Mr. Christensen might "stomp" on his face or kick him.

On cross-examination, defendant conceded he did not believe Mr. Christensen was armed and did not see him with any weapons. He said he was worried about Mr. Christensen "hitting" him and "fighting" with him and he needed to protect himself. He conceded he at no time told Mr. Christensen he had a knife, nor told him to back off because he wanted to stop fighting. Defendant denied telling the police officers who detained him that he had intended to kill Mr. Christensen. He said he did not make the statement testified to by Officer Robles. He also admitted he did not tell the police that he had been attacked by Mr. Christensen. Defendant denied throwing or pushing the laundry cart at Mr. Christensen after he had been cut. He said that Mr. Christensen kicked the cart at him first, and then he shoved it back at him.

The jury found defendant not guilty of attempted murder, but guilty of assault with a deadly weapon. The jury also found true the enhancements for use of a deadly weapon and infliction of great bodily injury.

In a bifurcated proceeding, the trial court found true the allegations regarding defendant's four prior convictions: a 1970 conviction for robbery in California, a 1976 conviction for attempted robbery with a firearm in Oklahoma, a 1979 conviction for first degree manslaughter in Oklahoma, and a 2008 conviction for assault with a dangerous weapon in Oklahoma. The court also denied defendant's motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, reasoning that defendant had "essentially an unbroken string of criminality going back over 50 years."

4

Defendant was sentenced to state prison for a term of 25 years to life on count 2 (Pen. Code, § 667, subd. (e), § 1170.12, subd. (c)), plus a consecutive determinate term of 23 years. The determinate term was calculated as follows: four consecutive five-year terms for each of the prior convictions (§ 667, subd. (a)(1)), plus a consecutive three-year term for the great bodily injury enhancement (§ 12022.7).

This appeal followed. After briefing was complete, we granted defendant's request to submit a supplemental letter brief regarding the trial court's true findings on two of his prior convictions. Respondent submitted a responsive letter brief, and we granted defendant's request to submit a supplemental letter brief in reply to respondent's letter brief.

## DISCUSSION

### 1.      Substantial Evidence of Assault

Defendant contends the record lacks substantial evidence he committed an assault. In particular, defendant argues the prosecution failed to prove beyond a reasonable doubt that he did not act in self-defense. Our task is to review " 'the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 988.) We conclude there is solid evidence supporting the jury's verdict.

"For an assault to be in self-defense, the defendant must actually and reasonably believe in the need to defend." (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 518.) " 'Fear of future harm--no matter how great the fear and no matter how great the likelihood of the harm--will not suffice. The defendant's fear must be of *imminent* danger to life or great bodily injury.' [Citation.]" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.)

Here, defendant testified he believed Mr. Christensen was violent and could hurt him. But, he also conceded he never saw Mr. Christensen with a weapon and did not believe he had one on him. Defendant said he just needed to protect himself from Mr. Christensen "hitting" him with his fists and "fighting" with him, because he was

5

younger than defendant. Defendant was fearful because he was older and getting tired. It is well established that "any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.] The right of self-defense [does] not provide defendant with any justification or excuse for using deadly force to repel a nonlethal attack." (*People v. Pinholster* (1992) 1 Cal.4th 865, 966, overruled in part on other grounds as stated in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Moreover, although defendant argued that Mr. Christensen threw the first punch and was the alleged aggressor, Mr. Christensen denied initiating the altercation, and Mr. Wilson testified that the fight appeared to be mutual with both men hitting each other. Further, the testimony of Officer Robles regarding defendant's statements upon detention corroborated a finding that defendant was the aggressor. Defendant never told the police that Mr. Christensen had attacked him or that he had only tried to defend himself.

The jury was instructed with CALCRIM No. 3471 regarding mutual combat and the defense of self-defense. In order to assert the defense, a defendant must actually and in good faith attempt to stop fighting, indicate by word or conduct to his or her opponent that he wants to stop fighting, and must give his or her opponent a chance to stop fighting. There was no such evidence here.

## 2. The Prior Convictions

In his supplemental brief, defendant concedes the court was justified in finding that two of his prior convictions qualified as strikes (the 1970 California robbery conviction and the 2008 Oklahoma conviction for assault with a deadly weapon), and in sentencing him as a third strike offender.

However, he contends the other two Oklahoma convictions found true by the court (the 1976 attempted robbery with a firearm, and the 1979 manslaughter in the first degree) do not qualify under California law as serious or violent felonies. Defendant asks this court to reverse those findings, and strike each of the five-year terms added to his sentence for those two prior convictions pursuant to Penal Code section 667,

6

subdivision (a)(1).  Respondent maintains that the court properly concluded both prior convictions qualified as strikes and serious or violent felonies.

In order to determine whether an out-of-state conviction qualifies as a serious or violent felony under California law, the trial court must compare the statutory elements of the out-of-state offense with the statutory elements under California law.  Only where the elements are the same, or narrower, than California's statute may the out-of-state conviction be deemed to qualify as a serious or violent felony for sentencing purposes.  (See *Descamps v. United States* (2013) ___U.S.___ [133 S.Ct. 2276, 2281] (*Descamps*); see also *People v. McGee* (2006) 38 Cal.4th 682, 706 (*McGee*).)

Where the offense at issue is divisible and lists multiple alternative means by which the offense may be committed, the trial court may also undertake a limited review of the record of the prior conviction to determine which of the statutory alternatives formed the basis for the defendant's conviction.  (*Descamps*, *supra*, 133 S.Ct. at pp. 2283-2285.)  "By reviewing the extra-statutory materials approved in those cases, courts could discover 'which statutory phrase,' contained within a statute listing 'several different' crimes, 'covered a prior conviction.'  [Citation.]" (*Id.* at p. 2285; see also *Taylor v. United States* (1990) 495 U.S. 575 [charging instrument, jury instructions], and *Shepard v. United States* (2005) 544 U.S. 13 [plea agreement, transcript of plea colloquy].)

Under California law, robbery and attempted robbery are serious felonies.  (Pen. Code, § 1192.7, subd. (c)(19) & (39).)  However, defendant argues his 1976 Oklahoma attempted robbery conviction does not qualify because the elements of Oklahoma's robbery statute are not the same as California's statute, and because Oklahoma's statute for use of a firearm is broader than California's, allowing for conviction and a heightened prison term with the use of a toy or imitation gun.

Robbery is defined in Oklahoma as "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Okla. Stat., tit. 21, § 791.)  In California, robbery is defined in nearly identical terms:  "Robbery is the felonious taking of personal

7

property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.)

Despite the similar statutory language, "[r]obbery, like other theft crimes in California, requires the specific intent to permanently deprive the victim of his or her property." (*People v. Mumm* (2002) 98 Cal.App.4th 812, 816-817.) In contrast, Oklahoma courts have held that robbery there is purely a creature of statute and does not require proof of any specific intent. "It would seem from the use of the word 'wrongful' that our definition is more limited than the common law definition and that no intent is necessary except the intention of doing the act denounced by the statute. The word 'wrongful' imports in its terms the infringement of some right, and 'wrongful taking' would seem to be any taking of personal property against the will of the possessor, and if accomplished by means of force or fear it is robbery. No state of mind or belief is involved." (*Traxler v. State* (1952) 251 P.2d 815, 836.)

Respondent argues the conviction qualifies on the alternative basis that defendant's conviction was for attempted robbery with the use of a firearm. Use of a firearm with any enumerated felony qualifies under California law as a serious or violent felony. (Pen. Code, § 1192.7, subd. (c)(23).) However, the Oklahoma statute defining robbery with use of a firearm includes the use of a blank or imitation firearm capable of creating fear that it is a real firearm. (Okla. Stat., tit. 21, § 801.) Under California law, a toy or imitation firearm is not included in the definition of a firearm for any of the firearm enhancement statutes. (Pen. Code, § 16520 [" 'firearm' means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion"]; see also *People v. Law* (2011) 195 Cal.App.4th 976, 983 [" 'toy guns obviously do not qualify as a "firearm" ' "].) The firearm aspect of Oklahoma's statute for robbery with a firearm is therefore broader than California's firearm enhancement statutes.

Nothing from the record of conviction presented below demonstrates whether or not defendant used a real firearm that meets the California definition. " '[W]hen the record does not disclose any of the facts of the offense actually committed, the court will

8

presume that the prior conviction was for the least offense punishable under the foreign law.' [Citation.]" (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262.) There is nothing in the record of conviction that allows for a finding that defendant's 1976 conviction qualifies as a serious or violent felony under Penal Code section 1192.7, subdivision (c)(23). Accordingly, the true findings on the 1976 attempted robbery conviction must be reversed.

With respect to defendant's 1979 Oklahoma conviction for manslaughter in the first degree, we also conclude the true findings must be reversed. The Oklahoma statute for manslaughter in the first degree provides: "Homicide is manslaughter in the first degree in the following cases: [¶] 1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor. [¶] 2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide. [¶] 3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed." (Okla. Stat. tit. 21, § 711.)

Oklahoma's statute is therefore broader than California's voluntary manslaughter statute (Pen. Code, § 192), including in subdivision 1 a form of homicide that more closely equates to misdemeanor manslaughter or involuntary manslaughter, neither of which is enumerated as a qualifying serious or violent felony under section 1192.7, subdivision (c), or section 667.5, subdivision (c).

Because Oklahoma's manslaughter statute is a divisible statute, the trial court was entitled to look beyond the statutory elements to the record of conviction. However, the Penal Code section 969b packet admitted into evidence below does not contain any of the documents recognized in *Descamps* and *McGee* as appropriate for the court's limited review in determining which of the statutory alternatives formed the basis for defendant's conviction. Respondent points to a "case report" which includes purported summaries of witness statements indicating defendant used a gun and dragged the victim to a car. However, respondent provides no case law authorizing the court's review of such

9

records, and they appear to us to be inadmissible hearsay.  Because the elements of the Oklahoma statute are broader than California's voluntary manslaughter statute, and because there are no permissible records before us to determine whether the offense would qualify as voluntary manslaughter under California law, we must reverse the true findings on the 1979 manslaughter conviction.

We remand for a limited retrial on the 1976 attempted robbery with a firearm conviction and the 1979 manslaughter conviction.  (*People v. Marin* (2015) 240 Cal.App.4th 1344, 1366.)

## DISPOSITION

We reverse the findings that defendant's 1976 Oklahoma conviction for attempted robbery with a firearm and 1979 Oklahoma conviction for manslaughter in the first degree qualified as serious or violent felonies under California law.  We remand for a limited retrial on that issue.  If the People elect not to retry the two prior allegations, then two 5-year terms shall be stricken from defendant's sentence, and the superior court shall prepare and transmit a modified abstract of judgment to the Department of Corrections and Rehabilitation.

The judgment of conviction is affirmed in all other respects.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.


RUBIN, J.

10