Filed 6/16/16  P. v. Williamson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JERRY MICHAEL WILLIAMSON,<br><br>    Defendant and Appellant. | F069163<br><br>(Kern Super. Ct. No. BF149698A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Jonathan D. Roberts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant/defendant Jerry Michael Williamson was charged and convicted of weapons and narcotics offenses. On appeal, he contends his conviction for being a felon in possession of a firearm must be reversed for insufficient evidence. We affirm.

## FACTS

On May 2, 2013, officers from the Bakersfield Police Department served a search warrant at a residence on El Rancho Drive. Defendant was the only person at the home when the warrant was served. He was placed in handcuffs and detained during the search.

The officers found five rifles lying on the floor of a cluttered garage. Detective McAfee described the weapons as "five long rifles or long guns." The rifles were neatly lined up on a towel. The police took a photograph of the weapons as they were found on the garage floor.

Officer Tsang was part of the search team, and also testified they found "five long rifles" on the garage floor. Tsang testified he had training about firearms and different types of rifles. Tsang picked up and examined each rifle to make sure it was not loaded: "[I] locked the bolt to the rear and made sure there was no round in the chamber." Tsang testified four of the rifles were bolt action. One rifle did not have a handle for the bolt. He wrote the down serial number for each weapon and placed all the rifles in a bag.

Based on the serial numbers, Officer Tsang later determined one rifle had been reported stolen. The rifles were not submitted for fingerprint analysis.

Officer Tsang testified he was familiar with BB and pellet guns and had retrieved less than five such guns in his professional experience. Tsang testified all of the rifles appeared to be actual firearms, designed to shoot and capable of shooting. None of the rifles appeared to be gas powered BB or pellet guns.

There were several small, immature marijuana plants growing in containers in the garage.

2.

Inside the house, the officers searched the bedroom and found a glass pipe, a burnt spoon, and a syringe on the bedroom nightstand. There was an off white residue on pipe's burnt end. There was mail addressed to defendant in the bedroom.

A picture frame was laying in the middle of the bed. There was an off-white substance loosely laying on top of the frame, later determined to be 0.28 grams of methamphetamine. A second glass pipe was also on the bed along with a laptop computer and sexual items.

A wallet with defendant's driver's license was found on the other nightstand in the same bedroom. A cell phone was next to the wallet. Detective McAfee testified the cell phone contained a photograph which showed "five long rifles, long guns." McAfee compared the photograph to the rifles found in the garage and believed the picture showed the same weapons based on the nature and appearance of the rifles.

There were five immature marijuana plants growing in the backyard. The plants were five to 10 inches tall. The officers did not find a medical marijuana card or a license to grow marijuana.

**Defendant's postarrest interview**

Detective McAfee arrested defendant and took him to the police department, where he conducted a recorded interview. He advised defendant of the *Miranda*[1] warnings, and defendant said he would answer questions.

Defendant said he owned the El Rancho house and had lived there for eight years. Several other people had lived there in the past. At the time, he was living with a woman named Cherise.

Detective McAfee asked defendant about the methamphetamine and the narcotics paraphernalia. Defendant said he did not know about it, and the items did not belong to

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436

3.

him.  Defendant said he only smoked marijuana, and he never used methamphetamine.
Defendant claimed that the officers had planted evidence.

Detective McAfee asked defendant about the marijuana plants.  Defendant said the plants belonged to him, and he had a license to grow them since 1996.  McAfee told defendant the license was supposed to be displayed, and asked defendant why they could not find it during the search.  Defendant said the license was in his bedroom, and they just didn't find it.

Detective McAfee asked defendant about the five rifles found in the garage: "[O]bviously you had knowledge of 'em, 'cause you're taking pictures of them on your phone.  And you're sending them to people…."  Defendant said the rifles did not belong to him.  Defendant claimed that a police officer gave the rifles to another person in exchange for defendant's dirt bike.

Detective McAfee asked for the name of the officer who allegedly traded the rifles.  Defendant did not give a name or respond to further questions.

It was stipulated that at the time of the search, defendant was prohibited from owning, purchasing, receiving or possessing a firearm within the meaning of Penal Code section 29800, subdivision (a)(1).

**Charges, conviction and sentence**

After a jury trial, defendant was convicted of count I, felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1));[2] count III, possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and count IV, misdemeanor possession of a device to inject or smoke a controlled substance (Health & Saf. Code, § 11364.1).  He was found not guilty of count II, unlawfully planting or cultivating marijuana (Health & Saf. Code, § 11358).  The court found he had two prior prison term enhancements.

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

On March 21, 2014, the court sentenced defendant to three years eight months: the upper term of three years for count I; a consecutive term of eight months (one-third the midterm) for count III; and a concurrent term of 180 days for count IV. The court ordered the enhancements stricken.[3]

## DISCUSSION

### I.     Defendant's Conviction is Supported by Substantial Evidence

Defendant was charged and convicted in count I of being a felon in possession of a firearm, based on the rifles found in the garage.[4] Defendant argues his conviction in count I is not supported by substantial evidence because the People failed to prove any of the rifles were actual "firearms" as defined by statute, and the weapons could have been BB, toy or pellet guns.[5]

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Moreover, unless the testimony is physically impossible or

---

[3] In his opening brief, appellate counsel argued defendant was entitled to resentencing under Proposition 47. In his reply brief, counsel withdrew this argument and advised the court that defendant had been resentenced under Proposition 47.

[4] As to count I, the prosecutor argued that defendant had possession of a firearm because "he had five of them in his garage." The jury was instructed with CALCRIM No. 2511: "The People allege that the defendant possessed more than one firearm. You may not find the defendant guilty unless all of you agree that the People have proved that the defendant possessed at least one of the firearms, and you all agree on which firearm he possessed."

[5] In his closing argument, defense counsel did not claim the rifles were BB or pellet guns, but instead argued the prosecution failed to prove defendant knew about the rifles.

5.

inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"The standard of appellate review is the same in cases in which the People rely primarily on circumstantial evidence. [Citation.] Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.] 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932–933; *People v. Stanley* (1995) 10 Cal.4th 764, 792–793.)

### *Definition of a "Firearm"*

Defendant was convicted in count I of being a felon in possession of a firearm in violation of Penal Code section 29800, subdivision (a)(1), which states:

> "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."

As applicable to this statute, " 'firearm' means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (Pen. Code, § 16520, subd. (a) [former § 12001, subd. (b)].) This definition does not encompass a toy gun, pellet gun or BB gun. (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*); *People v. Law* (2011) 195 Cal.App.4th 976, 983 (*Law*).) "[T]oy guns obviously do not qualify as a 'firearm,' nor do

6.

pellet guns or BB guns because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile. [Citation.]" (*Monjaras, supra,* 164 Cal.App.4th at p. 1435.)

Whether a defendant has used, possessed, or been armed with a firearm; whether that weapon is a particular firearm; or whether the weapon is loaded, are all questions of fact. (*People v. Wilson* (2008) 44 Cal.4th 758, 806; *People v. Frausto* (2009) 180 Cal.App.4th 890, 896–897; *People v. Masbruch* (1996) 13 Cal.4th 1001, 1007; *People v. Runnion* (1994) 30 Cal.App.4th 852, 856; *People v. Rodriguez* (1999) 20 Cal.4th 1, 12–14.)

The trier of fact must similarly determine whether an object is a "firearm" as defined by statute. (*Law, supra,* 195 Cal.App.4th at pp. 983–984; *Monjaras, supra,* 164 Cal.App.4th at p. 1436; *People v. Green* (1985) 166 Cal.App.3d 514, 517.) As with any other factual determination, circumstantial evidence alone is sufficient. (*Law, supra,* 195 Cal.App.4th at pp. 978–979; *Monjaras, supra,* 164 Cal.App.4th at pp. 1435–1438.) The jury may consider a witness's testimony as to the object's appearance, the witness's experience with firearms, and the defendant's words and conduct. (See, e.g., *People v. Rodriguez, supra,* 20 Cal.4th at pp. 12–13; *Monjaras, supra,* 164 Cal.App.4th at pp. 1435–1438.) The jury need not give a defendant the benefit of a witness's inability to say conclusively whether the weapon was real or not. (*Monjaras, supra,* 164 Cal.App.4th. at p. 1436.)

*Analysis*

There is substantial evidence that all of the rifles found in the garage were "firearms" and not toy, pellet, or BB guns. Detective McAfee described the weapons as "five long rifles or long guns." Officer Tsang similarly described the weapons as "five long rifles." Tsang testified he had training about firearms and different types of rifles. Tsang picked up and examined each rifle to make sure it was not loaded: "[I] locked the

7.

bolt to the rear and made sure there was no round in the chamber." Tsang testified four rifles were bolt action, and the fifth did not have a handle for the bolt.

Officer Tsang testified he was familiar with BB and pellet guns and had retrieved less than five such guns in his professional experience. Tsang testified all of the rifles appeared to be actual firearms, designed to shoot and capable of shooting. None of the rifles appeared to be gas powered BB or pellet guns.

When Detective McAfee interviewed defendant about the contraband found in the house, defendant denied any knowledge of the methamphetamine, claimed he only smoked marijuana, and accused the officers of planting evidence. McAfee also asked defendant about the five "rifles" found in the garage, and said he must have known about them since there was a photograph of the rifles on his cell phone. In contrast to his answer about the narcotics, defendant did not deny knowledge of the firearms or claim they were not "rifles." Instead, defendant said the rifles did not belong to him, they belonged to someone else, and this person had traded defendant's dirt bike to an officer in exchange for the rifles. When pressed about his story, defendant failed to identify the officer who purportedly traded the rifles to this unnamed third person.

Defendant acknowledges that circumstantial evidence may be relied upon to find a weapon is a "firearm," but argues the cases in support of that premise involved situations where defendants brandished weapons at victims to commit crimes, and frightened victims testified that the weapons appeared to be operable firearms. Defendant argues that in this case, the weapons were not being brandished and were simply laying on the garage floor. For example, in *Monjaras*, *supra*, 164 Cal.App.4th 1432, the defendant "displayed the handle of a black pistol tucked in his waistband" and ordered the victim to give him her purse. He then pressed something against the victim's back and took the purse from her shoulder. (*Id*. at p. 1434.) The defendant argued there was no evidence the pistol was a "firearm" as defined by statute, and it was not a BB or air gun. *Monjares* held that while "the victim could not say whether the pistol in defendant's waistband was

a gun or a toy," the defendant "was not engaged in a childhood game of cops and robbers; the robbery was real, and the evidence supports a reasonable inference that the pistol he used was a real firearm, not a toy…." (*Ibid.*)

As relevant to this case, *Monjares* further held that "[c]ircumstantial evidence alone is used to prove the object was a firearm. This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation." (*Monjares*, *supra*, 164 Cal.App.4th at p. 1436.) In reaching that holding, *Monjares* did not rely on specific cases related to the identification of firearms. Instead, *Monjares* relied on well-recognized principles of the substantial evidence rule, that inferences drawn from circumstantial evidence are sufficient to support a conviction (*People v. Maury* (2003) 30 Cal.4th 342, 396), and circumstantial evidence is as sufficient as direct evidence to support a conviction (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208). (*Monjares*, *supra*, 164 Cal.App.4th at p. 1436.)

While defendant did not brandish or use the rifles in this case, that factor does not undermine reliance on direct and circumstantial evidence to support his conviction in count I. The testimony from the two officers provided substantial evidence to support defendant's conviction and the jury's finding that the rifles were "firearms" as defined by Penal Code section 16520, subdivision (a).

## DISPOSITION

The judgment is affirmed.

                       _____

                       POOCHIGIAN, Acting P.J.

WE CONCUR:


_____

FRANSON, J.


_____

SMITH, J.