Filed 1/18/22  P. v. Moarefy CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEPEHR MOAREFY,<br><br>    Defendant and Appellant. | 2d Crim. No. B307200<br>(Super. Ct. No. LA087580)<br>(Los Angeles County) |

Sepehr Moarefy appeals a judgment following his conviction for assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2)) (count 1), with a jury finding that he personally used a firearm, a handgun, within the meaning of section 12022.5; and possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 2). Moarefy's prior strike convictions bring him within the purview of the "Three Strikes" law.  He was sentenced to an aggregate state prison term of six years.

---

[1] All statutory references are to the Penal Code.

We conclude, among other things, that 1) Moarefy knowingly and voluntarily agreed to be tried by an 11-person jury; 2) the trial court was not required to instruct the jury on the lesser-included offense of simple assault; 3) the court was not required to instruct the jury on the lesser-included enhancement of being armed with a firearm; and 4) the court did not abuse its discretion by declining to strike a prior strike conviction in sentencing. We affirm.

## FACTS

Courtney Cassells testified on December 16, 2017, that she was living in an apartment complex. She heard "a lot of yelling" directly above her apartment. She heard a male saying he was "going to kill [her]" and a female saying she "was going to stab him." She heard a boy crying.

Cassells went upstairs and knocked on the door of the upstairs apartment and said, " 'Quiet down or else I'm going to call the police.' " A woman opened the door and "she seemed scared."

Moarefy "came running" to the door. "He came out forcefully." He "pushed [the woman] out of the way." With an "angry, vicious" demeanor, Moarefy asked Cassells, two or three times, "Do you want to come to my house?"

Moarefy had a silver and black handgun in his hand. Cassells testified the gun was "at his side at first, but once the female was out of the way, he raised it a little bit towards [her] lower half." He pointed the gun at her. He was three or four feet away from her. Moarefy was outside the apartment and he was looking at Cassells while he was pointing the gun at her.

Cassells raised her hands. She testified, "I was really scared. I thought he was going to do something." As she walked

down the stairs, she saw Moarefy "with the gun looking at [her] as [she] went back down." Moarefy was pointing the gun "towards [her], making sure [she went] back into [her] door." The slide of the handgun was "slit forward in a shooting position." She called the police.

In a September 18, 2019, interview with the police, Cassells said Moarefy "was pointing [the gun] at [her] direction as [she] was going down the stairs."

In the defense case, Police Officer Brigitta Shapiro testified that Cassells told her that "she was halfway down the flight of stairs when she turned back and she saw [Moarefy] with the handgun pointed through the railing at her."

Janella Racherds testified that Moarefy is the father of her child. She had an argument with Moarefy. She told him that "if he didn't leave [her] alone, get away from [her], [she] was going to cut him." She had a handgun that she had bought for her protection. She had "a mental breakdown," she "snapped," and "wanted to kill" herself. She grabbed the gun from the "cupboard." She was depressed. She gave the gun to Moarefy. Moarefy told her to give him the gun "because he was trying to calm [her] down." Racherds knew Moarefy was a convicted felon.

Racherds heard "a knock on the door." She eventually opened the door. She testified that before she opened the door, Moarefy advanced to the door with a loaded gun in his hand. The gun was "in his hand to the side."

After opening the door, Racherds saw her neighbor Cassells at the door. Cassells said, "[Y]ou guys woke me up. I'm calling the cops." Moarefy said, "Call the fucken cops. I don't care." He then "slammed the door in her face." He put the gun away.

3

## DISCUSSION

### *Moarefy's Decision to Waive a 12-Person Jury*

During trial the trial court excused three trial jurors which left a jury of only 11 persons. Moarefy agreed to be tried by an 11-person jury.

Moarefy contends he did not make a voluntary and intelligent waiver of his right to be tried by a 12-person jury. He claims his agreement to be tried by an 11-person jury was consequently invalid constituting reversible error.

The People claim Moarefy "adequately elected to be tried by an 11 person jury." We agree.

"Although the right to a 12-person jury is fundamental, it may be waived." (*People v. Traugott* (2010) 184 Cal.App.4th 492, 500.) "Because the right to a jury may be waived, the defendant may stipulate to a trial by a jury of fewer than 12 persons." (*Id.* at p. 501.) "Like the waiver of the right to a jury, the consent to a jury of fewer than 12 persons must be expressed by the defendant in open court." (*Ibid.*) The waiver " 'may not be accepted by the court unless it is knowing and intelligent' " and voluntary. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166.) Voluntary means it is the product of "free and deliberate choice" and not the result of "intimidation, coercion, or deception." (*Ibid.*) A knowing and intelligent waiver is one that is made with the "awareness . . . of the right being abandoned." (*Ibid.*) We examine "the totality of the circumstances" in deciding the validity of a jury trial waiver. (*Id.* at p. 167.) We may consider, among other things, such factors as the court's express advisement about the right to a jury trial, the defendant's statements, the defendant's appearance in court with counsel and the defendant's prior experience with the criminal justice system. (*Ibid.*)

4

After deciding to excuse the three trial jurors, the court held a conference with Moarefy and counsel.

The court: "We do have 11 untainted jurors. I would be willing to proceed with those 11, if both sides and the defendant agreed."

Barnwell (Moarefy's counsel): *"I agree. I've spoken with Mr. Moarefy and he has agreed."* (Italics added.)

Moarefy: "What am I agreeing to?"

Barnwell: "To continue the trial with 11 jurors."

Moarefy: *"Yes, Yes, Your Honor, I agree."* (Italics added.)

The court: "So you understand, Mr. Moarefy, that you have a right to have 12 jurors decide your case and all 12 jurors would have to agree that you were guilty or all agree that you're not guilty to come to any verdict. But, if you agree, we can proceed and finish this trial with only 11 jurors, and they would be told that they all have to agree with each other in order to return a verdict. So is that agreeable with you?"

Moarefy: What happens if I disagree?"

The court: "Then I'll have to decide."

Moarefy: "You just pick a new jury?"

The court: "I'll have to decide."

Barnwell: "Your Honor, just -- if we proceed, we would have ten and one alternate?"

The court: "No, I think we should have no alternates, and a jury of 11."

Barnwell: "Well, the only reason that I would say that and just to put on the record now, we got an odd number."

The court: "Well, unanimous is unanimous whether it's 12 or 14 or six. One upsets."

Barnwell: "I just …"

The court: "I would feel more comfortable with going with 11."

Gorn (the prosecutor): "Yes."

The court: "It's closer to 12. Mr. Moarefy, no one talked to the other 11. We kept the other 11 totally separate. They've had no contact with the other jurors."

Barnwell: "Okay. Say again."

Moarefy: "*Let's go, move forward.*" (Italics added.)

The court: "*You want to go with the 11 jurors?*" (Italics added.)

Moarefy: "*Yeah, I'm tired of pushing this forward and forward.*" (Italics added.)

The court: "Then the three jurors will be dismissed, and I'm just going to thank them in the back and allow them to go, and I think a couple of detectives want to talk to them."

Barnwell: "Just for the record, *Mr. Moarefy hit the table with a willingness to proceed.*" (Italics added.)

The court: "*I interpreted it as that.* It was a tap." (Italics added.)

Moarefy notes that the trial court did not give complete responses to some of his questions about what would happen if he did not agree to an 11-person jury. He contends the court should have advised him that it would have to declare a mistrial if he did not agree.

But the trial court could reasonably infer from Moarefy's statements that he did not want to have a mistrial and face the prospect of calling in another jury. He said, "I'm tired of pushing this forward and forward." His counsel noted that Moarefy hit the table "with a willingness to proceed" showing his decision to proceed was voluntary. This case was a retrial after the court

6

had previously declared a mistrial because the jury was deadlocked in the first trial of Moarefy.

The trial court's introductory remarks at this hearing provided notice to Moarefy that it could not proceed with trial if Moarefy did not agree with having the case tried with an 11-person jury. Consequently, the court could reasonably find that Moarefy knew that he had the power to end this trial if he wanted to, but he wanted to proceed.

The People note the record also shows that Moarefy had discussed the 11-person jury issue with his counsel before the colloquy in court. His counsel told the court that Moarefy agreed to have an 11-person jury. (*People v. Sivongxxay, supra*, 3 Cal.5th at p. 167.) Moarefy unequivocally said he agreed to proceed with an 11-person jury in response to the court's question about that option. In fact, he indicated his willingness to proceed with an 11-person jury three times during questioning. He had prior experience with the criminal justice system as shown by his criminal record. (*Ibid.*) The court advised him about his right to have a 12-person jury and his right to have a unanimous verdict. (*Ibid.*) Moarefy has made no showing that he did not understand that right. Given the totality of the circumstances, the trial court could reasonably infer that his waiver of a 12-person jury and his agreement to the 11-person jury was knowing, intelligent, and voluntary. (*Ibid.*) Moreover, Moarefy's prior experience with the court system shows his familiarity with the function of a jury. His argument of his uncertainty about an 11-person jury is not persuasive.

*Instructional Error – Simple Assault*

Moarefy contends the trial court erred by not instructing the jury on the lesser-included offense of simple assault. We disagree.

The trial court instructed the jury on the offense of assault with a firearm. The instruction provided, in relevant part, that for a conviction the People must prove: "1. The defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force with a firearm to a person."

Simple assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) It is a lesser-included offense of assault with a firearm. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)

A trial court must instruct on a lesser-included offense whenever evidence that the defendant is guilty only of the lesser offense is substantial enough to merit consideration by the jury. Substantial evidence in this context is evidence from which reasonable jurors could conclude that the lesser offense, but not the greater, was committed. A lesser-included instruction is not required where the evidence involving the lesser offense is weak or raises only speculative inferences. (*People v. Breverman* (1998) 19 Cal.4th 142, 162; *People v. Basuta* (2001) 94 Cal.App.4th 370, 392.)

8

Moarefy contends there is no evidence that he had "any plan" to "rob" Cassells. But that is not a requirement for the charged offense. (*People v. Laya* (1954) 123 Cal.App.2d 7, 16 ["The mere pointing of a gun at a victim constitutes an assault with a deadly weapon, whether or not it is fired at all"].) He claims Cassells's statements to police in a September 11, 2019, interview show he did not point the gun at her. But during that interview, Cassells told police that "[h]e was pointing it at [her] direction" and she was afraid he was going to "shoot" her. "[I]t is not necessary to actually point the gun directly at the other person to commit the crime." (*People v. Raviart* (2001) 93 Cal.App.4th 258, 263.) Where a gun is pointed in the general direction of a victim, a conviction may be sustained where the gun "was in a position to be used instantly." (*People v. Thompson* (1949) 93 Cal.App.2d 780, 782; see also *People v. Escobar* (1992) 11 Cal.App.4th 502, 505 [rejecting defendant's claim that because he did not point the gun at the victim he could not be found guilty of assault with a firearm].)

In the defense case, Moarefy called Police Officer Shapiro. But Shapiro's testimony does not support an instruction on simple assault. Shapiro testified that Cassells told her that "she was halfway down the flight of stairs when she turned back and she saw [Moarefy] with the *handgun pointed through the railing at her*." (Italics added.)

Racherds's testimony in the defense case did not provide substantial evidence for a lesser-included simple assault instruction. In fact, her testimony partially corroborated the People's case. She did not claim that Moarefy was unarmed or did not have a gun in his hand when he approached the door. Instead, she confirmed that he had a *loaded gun in his hand* as

9

he went to that door. She testified the gun was "in his hand to the side."

Consequently, Racherds's testimony supports findings in favor of the People's case that as Moarefy approached the door, the gun "was in a position to be used instantly." (*People v. Thompson, supra*, 93 Cal.App.2d at p. 782.) With the loaded gun in his hand, Moarefy had "the present ability to commit a violent injury." (*People v. Schwartz* (1992) 2 Cal.App.4th 1319, 1326.) "It was enough that defendant brought the gun into a position where he could have used it . . . ." (*People v. Raviart, supra*, 93 Cal.App.4th at p. 266; *People v. Escobar, supra*, 11 Cal.App.4th at p. 504 [gun was in defendant's "leather 'briefcase purse' "; conviction of felonious assault affirmed].)

But a critical issue is where the gun was pointed *after* the door was opened. That is when the victim Cassells appeared in front of Moarefy. There was no testimony on that issue from Racherds. The People presented the evidence on that issue. No witness testified that Moarefy was not using a gun. (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 82.) The only testimony in the defense case about where the gun was pointed after the door was opened came from Shapiro, and that testimony supported the judgment. Consequently, the trial court did not err because there was no substantial evidence to support an instruction on simple assault. Speculation will not suffice to support a lesser-included instruction.

Moreover, the jury found the special allegation that Moarefy used a firearm in committing this crime to be true. This was a rejection of the defense position that Moarefy "never pointed a gun at [Cassells]."

*The Firearm Use Instruction*

The jury found Moarefy "personally used a firearm, a handgun, within the meaning of Penal Code section 12022.5 to be TRUE."

Moarefy contends the trial court should have sua sponte also instructed jurors on the lesser-included enhancement of being armed with a firearm. He claims that is a lesser-included enhancement to the instruction the trial court gave on the firearm use enhancement. (§ 12022.5.)

"An enhancement of being armed with a firearm is necessarily included in a charging allegation of firearm use . . . ." (*People v. Turner* (1983) 145 Cal.App.3d 658, 684, overruled on other grounds in *People v. Newman* (1999) 21 Cal.4th 413.) But as the People note, and as shown above, there was no substantial evidence to support a finding that Moarefy did not use a firearm in committing this crime.

*Not Dismissing a Three Strikes Prior Conviction for Sentencing*

Moarefy contends the trial court abused its discretion by "refusing to dismiss [his] sole Three Strikes prior conviction" in sentencing. He claims the prior conviction was "relatively minor" and he is not a " 'revolving door' career criminal."

Moarefy filed a motion "to strike [his] prior conviction" which was a 2013 "strike" conviction for violating section 422 by "making a criminal threat." The trial court denied the motion. Moarefy notes that the court "struck the personal use firearms allegation (§ 12022.5), as well as the serious felony prior conviction (§ 667, subd. (a)(1)) [enhancement]." But because it did not strike the prior strike, he received the three-year midterm for count 1, doubled because of the prior strike. The court stayed

11

the sentence on count 2 (§ 654) for an aggregate sentence of six years in prison.

A trial court's decision not to strike priors is reviewed for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) A trial court "does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) The court considers the nature of the defendant's violent felonies, as well as factors involving his or her background, to determine if the defendant falls outside the spirit of the Three Strikes law. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The presence or absence of mitigating sentencing factors in the probation report is a relevant factor in determining the sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 11; *People v. Betterton* (1979) 93 Cal.App.3d 406, 415.)

The trial court found Moarefy had a "record of threatened violence" given his prior strike conviction under section 422. The probation report was not favorable for Moarefy. It indicated that Moarefy was "a serious threat to society." In the category of "circumstances in mitigation," the probation department said there were "none." Moarefy disagrees with the court's sentencing decision, but has not shown an abuse of discretion given the nature of his crimes and the factors listed in the probation report. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 376.)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

Martin Larry Herscovitz, Judge

Superior Court County of Los Angeles

_____

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.