[No. B060073. Second Dist., Div. Six. Dec. 2, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGEL DANIEL ESCOBAR, Defendant and Appellant.

**COUNSEL**

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Violet M. Lee and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Defendant holds a gun, but it is concealed because his hand is in a briefcase. The victim, who is standing in front of defendant, hears the sound of the gun being cocked. Here we hold this is sufficient evidence to sustain a conviction of assault with a firearm.

Defendant Angel Daniel Escobar appeals from the judgment entered upon his plea of guilty to receiving stolen property and his conviction by the court of felonious assault, with personal use of a firearm, and possession of a concealed firearm in a vehicle, with the finding he used a firearm in the commission of receiving stolen property. (Pen. Code, §§ 245, subd. (a)(2), 496, subd. 1, 12022.5, 12025, subd. (a).)

Scott Esparza, a bail bondsman, posted a $10,000 bail bond for Escobar in an unrelated matter. Escobar's friend, Cynthia Durkin, gave Esparza a check for the $1,000 premium. Escobar asked Esparza not to cash the check but stated he would pay the $1,000 in cash when he was released from jail.

Escobar was released from custody, and although the premium had been earned by Esparza when he secured Escobar's release, Escobar made no arrangement to pay Esparza. Escobar finally promised to meet Esparza at an Ojai restaurant at 4 p.m., a week after he had been released.

Escobar telephoned Esparza at 2:30 p.m. on the day of the meeting and told him his car had broken down on Creek Road outside Ojai. Esparza asked Escobar to call him back in a half hour. When Escobar did so, he told Esparza he was waiting for a tow truck and told Esparza if he wanted his money he should "come and get it" before the tow truck arrived. Esparza went to the location and found Escobar standing near a car on an isolated stretch of Creek Road. After speaking with Escobar, Esparza offered to prepare a receipt for $1,000 and walked back to his vehicle, where he wrote out a receipt on the back of a business card.

When Esparza returned to Escobar's car, Escobar was sitting on the passenger side with his legs outside the vehicle, holding a leather "briefcase purse" with his left hand. His right hand was inside the purse. As Escobar stood up, Esparza heard a clicking noise which sounded like a gun being cocked. Esparza testified that because he was a bail bondsman, and had been in the military, he had "great knowledge of weapons."

He saw that Escobar's hand was flexed in a way that did not seem consistent with holding money. He thought Escobar's hand was gripping "something like a gun." He knocked the purse away from Escobar's hand, exposing a gun with the hammer pulled back. He disarmed Escobar, and discharged the gun into a gully. He then bound Escobar's hands with a belt and took him to the police.

Escobar admitted to Esparza that he did not have the money. Esparza received no money from Escobar and no money was found in Escobar's car when it was later searched. Escobar's girlfriend, who had lent him the car that day, testified the car was working well before she lent it to him and when she later recovered it from the impound yard. No calls to a towing company had been made that day from the cellular phone in the car. Evidence also established that the gun had been stolen from Joel Runyan during a 1988 burglary.

Escobar claimed he did not threaten Esparza with a gun and asserted that he had paid Esparza the $1,000, whereupon Esparza saw the gun on the console, became angry, seized the gun and bound his hands with a belt.

At sentencing, the trial court imposed a three-year term for felonious assault with a three-year firearm use enhancement. The court ordered that a

two-year term for receiving stolen property, a three-year firearm use enhancement for that offense, and a six-month jail term for the concealed firearm offense be served concurrently with the six-year sentence.

An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) The evidence established that Escobar had the intent to wilfully commit an act which, if completed, had as its direct, natural and possible consequences an injury to Esparza. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372]; *People* v. *Escarcega* (1974) 43 Cal.App.3d 391, 398 [117 Cal.Rptr. 595].)

Escobar argues that there was no attempt to use the weapon to inflict injury because he did not exhibit the weapon, or point or fire the weapon, but merely cocked it. We would not use so innocuous an adverb as "merely." Although Escobar did not succeed in actually inflicting injury on Esparza with the cocked, loaded gun, the evidence showed that Esparza was aware that Escobar was holding the gun inside the leather purse and that Escobar had the present ability to commit a violent injury. (*People* v. *Griggs* (1989) 216 Cal.App.3d 734, 742 [265 Cal.Rptr. 53].) This evidence establishes something more than mere preparation. Esparza did not have to see the gun. He could use his sense of hearing to perceive the intent to commit a violent injury on him.

The People concede that the firearm use enhancement as to the receiving stolen property count is not supported by sufficient evidence. (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].)

The judgment is modified to strike the firearm use enhancement in count 2, receiving stolen property, and in all other respects is affirmed.

Stone (S. J.), P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 11, 1993.