[No. C063221. Third Dist. May 20, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
HALSTON LAW, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

COUNSEL

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NICHOLSON, Acting P. J.**—In *People v. Monjaras* (2008) 164 Cal.App.4th 1432 [79 Cal.Rptr.3d 926] (*Monjaras*), this court addressed an oft-raised attack on the sufficiency of the evidence when the prosecution relied on circumstantial evidence to prove that a defendant used a firearm to commit a criminal offense. Noting that circumstantial evidence suffices to establish the

sentence enhancement imposed by Penal Code section 12022.53, subdivision (b),[1] we conclusively rejected the contention and published our opinion "to say in no uncertain terms that a moribund claim like that raised by defendant has breathed its last breath." (*Monjaras, supra*, at pp. 1434–1435.)

As in *Monjaras*, the jury in this case found that defendant Halston Law personally used a firearm within the meaning of section 12022.53, subdivision (b), when he committed a robbery (§ 211). (*Monjaras, supra*, 164 Cal.App.4th at p. 1434.) The jury in this case additionally convicted defendant of assault with a firearm (§ 245, subd. (a)(2)), and found that in committing both the robbery and assault, defendant personally used a firearm within the meaning of section 12022.5, subdivision (a). Consequently, the trial court imposed an aggregate 13-year prison sentence.

On appeal, defendant attempts to breathe new life into the argument that no inference of firearm use may be derived from circumstantial evidence. Thus, defendant urges us to strike firearm-use enhancements in a case in which his victims testified about his brandishing a "black and big" gun that he thrice shot at the victims after one of them attempted to wrestle the weapon away. In so arguing, defendant contends that *Monjaras* was incorrectly decided. We disagree and shall reaffirm our conclusion in *Monjaras* that " 'if it looks like a duck, and quacks like a duck, it's a duck.' " (*Monjaras, supra*, 164 Cal.App.4th at p. 1437.) Moreover, we find the reasoning of *Monjaras* in rejecting the challenge to circumstantial proof for the section 12022.53 arming enhancement to be equally applicable to similar challenges to convictions for assault with a firearm (§ 245, subd. (a)(2)) and personal use of a firearm as defined by section 12022.5, subdivision (a). In short, the evidence that defendant brandished and repeatedly discharged a firearm at the victims amply suffices to establish defendant's use of a firearm.

We also reject defendant's contention that the trial court abused its discretion by admitting into evidence a bullet found at the scene of the robbery. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Around 7:30 p.m. on June 3, 2007, Belyn Richards was driving through the Oak Park area of Sacramento with her two children in the backseat. Seeing a

---

[1] In pertinent part, subdivision (b) of Penal Code section 12022.53 provides that "any person who, in the commission of [an enumerated felony], personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply."

Further undesignated statutory references are to the Penal Code.

pedestrian she recognized, Richards pulled over to talk to her friend "Coco." Richards, who was pregnant, discussed her upcoming baby shower with Coco.

Suddenly, a gold-colored Mercedes pulled in front of Richards's car at a diagonal and parked so that her path was blocked. The driver was an African-American woman in her early 20's, who had a hood pulled over her head with blonde hair protruding.

Defendant, who had been riding in the passenger seat of the Mercedes, got out and walked to the driver's side of Richards's car. Through the open window, Richards saw defendant pull a gun from the front of his pants. Holding the gun no more than six inches away from Richards's face, defendant told her: "[G]ive me your money or break yourself." Richards replied, "I don't have anything." Defendant responded, "Give me what you have."

Richards grabbed the barrel of the gun, which she described as "black and big." Snatching the gun back, defendant "clocked [*sic*] the thing and said, Bitch, you think I'm playing with you . . . ." Richards's oldest daughter testified that Richards "just grabbed the gun and they started tussling for it, but then he pulled it back and it pinched her finger, so she left [*sic*] go." Richards testified that she cut her hand on the gun when defendant pulled it back.

Defendant reached into the car and took $30 off the passenger seat where Coco had been sitting. Coco had slipped out of the car during the robbery and was standing next to it "in a daze."

Defendant ran back to the Mercedes and got in. As the Mercedes pulled away, Richards memorized part of the license plate. Richards's daughter saw defendant "hanging out the window with the gun and pointing at—trying to point it at us, and shooting." Defendant fired his gun three times. Richards and her daughters ducked down. None of the shots hit Richards, her daughters, Coco, or the car.

Richards drove to the nearby house of her relatives. She was taken to the hospital to have her hand injury checked. At the hospital, Richards spoke with Sacramento Police Officer Jill Landberg. Richards gave the officer a description of defendant, the Mercedes, its driver, and a partial license plate number. Richards looked at Officer Landberg's gun and described defendant's gun as similar but bigger. Officer Landberg testified that Richards had described a cocking motion by defendant that readies a semiautomatic firearm for firing.

With the vehicle description and partial license plate relayed by Richards, the police searched through a database of vehicles to focus on a gold-colored, four-door Mercedes owned by defendant and his sister, Natalie Law.

At the hospital, Richards told the officer that the robbery occurred at "36th and 5th Avenue in between 6th and 7th" Avenues. Officer Landberg looked for the location described by Richards but found that it did not exist. At approximately 10:40 p.m., Officer Landberg went to Richards's house to clarify the location of the robbery. The officer also took along a photo lineup. Richards identified defendant as the robber. Richards also explained, "she was going down 9th Avenue and she turned on what she thought was 36th Avenue to go towards 5th Avenue. And she said that the robbery occurred between 6th and 7th Avenue." However, given Richards's direction of travel, she would have had to take 37th Avenue instead. Thus, the officer went to 37th Avenue and searched between 6th and 7th Avenues for evidence.

On 37th Street, between 6th and 7th Avenues, Officer Landberg located an unspent .22-caliber bullet. Officer Landberg testified that it is not uncommon to find shell casings on the street in the Oak Park area.

*Defense*

The defense called an expert on eyewitness identification, who explained how distractions, the presence of weapons, lack of focus, and stressful situations can negatively impact the ability to correctly identify someone. The expert further explained that even under ideal conditions, a 30 percent error rate in eyewitness identifications may be expected.

The defense called Donald Masuda, who represented defendant during his preliminary hearing in which Richards was asked to identify the man who had robbed her. Richards failed to identify defendant as the robber even though he was personally present at the hearing.

The defense also called Deputy District Attorney Leland Washington to testify about an interview with Richards that occurred after the preliminary hearing. Washington told Richards that they needed to "be on the same sheet of music." Richards admitted deliberately not identifying defendant at the preliminary hearing because "she didn't want, basically, to have to deal with this anymore."

Larry Griffin testified that he had known defendant for about five years. On June 2, 2007, he asked defendant if he could borrow his Mercedes the following day. Defendant agreed and, around noon on June 3, 2007, Griffin

went to defendant's house to pick up the car. After getting the keys from defendant's mother, Griffin drove to Oakland and returned around 6:00 or 7:00 p.m.

The defense also elicited an acknowledgment from Officer Landberg that Richards's oldest daughter did not identify anyone as the robber from the photo lineup shown to her. The daughter did not mention defendant firing a gun. Instead, she told the officer that defendant took the money from her mother's bra.

## DISCUSSION

### I

#### *Sufficiency of the Evidence Regarding Firearm Use*

Defendant contends insufficient evidence supports his conviction of assault with a firearm (§ 245, subd. (a)(2)) and the sentence enhancements for personal use of a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)). Specifically, he argues that the evidence did not suffice in "establishing this was a 'firearm' as opposed to a replica, a toy gun, or some other facsimile." The argument has no merit.

#### A

Subdivision (a)(2) of section 245 defines the crime of assault with a firearm as follows: "Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment."

■ Subdivision (a) of section 12022.5 provides a sentence enhancement for personal use of a firearm during a felony by providing, in pertinent part, that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." Subdivision (b) of section 12022.53 similarly prohibits personal use of a firearm in the commission of certain enumerated felonies.[2]

---

[2] See footnote 1, *ante.*

For purposes of these sections, a " 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." (§ 12001, subd. (b).) Consequently, "toy guns obviously do not qualify as a 'firearm,' nor do pellet guns or BB guns because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile." (*Monjaras, supra*, 164 Cal.App.4th at p. 1435.)

■ In *Monjaras*, this court explained that "[t]he fact that an object used by a robber was a 'firearm' can be established by direct or circumstantial evidence. [Citations.] [¶] Most often, circumstantial evidence alone is used to prove the object was a firearm. This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation. And since the use of what appears to be a gun is such an effective way to persuade a person to part with personal property without the robber being caught in the act or soon thereafter, the object itself is usually not recovered by investigating officers." (*Monjaras, supra*, 164 Cal.App.4th at pp. 1435–1436.) Nonetheless, "[c]ircumstantial evidence alone is sufficient to support a finding that an object used by a robber was a firearm." (*Ibid.*)

■ Thus, this court announced that "when as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b)." (*Monjaras, supra*, 164 Cal.App.4th at p. 1437.) Circumstantial evidence that establishes a defendant's personal use of a gun within the meaning of section 12022.53, subdivision (b), also suffices for personal use of a firearm for purposes of assault with a firearm (§ 245, subd. (a)(2)) and the personal use enhancement of section 12022.5, subdivision (a). (See § 12001, subd. (b) ["As used in this title, 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion."]; *People v. Escobar* (1992) 11 Cal.App.4th 502, 505 [13 Cal.Rptr.2d 927] [evidence sufficed for conviction of assault with firearm (§ 245, subd. (a)(2)) where the victim heard defendant cock a gun that was hidden from view inside a leather purse].)

B

The testimony given at defendant's trial amply sufficed to prove that defendant personally employed a firearm in robbing Richards. Indeed, the

evidence of gun use in this case is even stronger than that presented in *Monjaras*. The defendant in *Monjaras* merely displayed the handle of a gun before "defendant's accomplice pressed something against the victim's back" during a robbery. (*Monjaras, supra*, 164 Cal.App.4th at p. 1434.) Nonetheless, this court encountered no difficulty in affirming a sentence enhancement for use of a firearm during a felony. (*Ibid.*)

■ Here, Richards saw, felt, and heard the gun used by defendant. Richards testified that she saw the gun while it was only six inches away from her face. She handled the barrel of the gun when she tried to snatch it away from defendant. She sustained cuts on her hand due to being pinched by a part of the gun. Richards heard defendant "clock" the gun in a manner that readies a semiautomatic weapon for firing. Finally, she heard defendant fire three times at her and her children. Richards's daughter actually observed defendant hanging out of the Mercedes's window and firing at them. Based on this testimony, defendant's claim of evidentiary insufficiency fails.

Defendant argues that the evidence gave rise only to such weak inferences of firearm use that his constitutional guarantees to a fair trial were denied. Indeed, defendant believes that Richards's testimony amounts only to "speculation and suspicion" that defendant employed a gun. In so arguing, defendant contends that our decision in *Monjaras* reached the wrong result.

*Monjaras*, defendant asserts, erroneously allows a trier of fact to conclude that a firearm was used during a crime when the evidence shows that the perpetrator employed what looked like a real gun in a threatening manner. To this end, defendant summons a list of reported decisions involving crimes committed with toys, starter pistols, and pellet guns. Thus, he asserts that it might have been something other than a real firearm that he used during the robbery.

■ We reaffirm the reasoning and result in *Monjaras*. When the evidence shows that a criminal perpetrator threateningly displays what looks like a real firearm, a conviction or sentence enhancement depending on firearm use may not be reversed simply because the victim was not an expert on guns or failed to identify the exact make and model of the firearm employed. (See *Monjaras, supra*, 164 Cal.App.4th at p. 1434.)

Moreover, in this case, the evidence that defendant "clocked" his gun in a manner that prepares a semiautomatic weapon for firing before actually firing three shots at the victims is irreconcilable with any other conclusion that defendant personally used a real firearm. Accordingly, his challenge to the sufficiency of the evidence supporting his conviction of assault with a firearm and sentence enhancements for personal use of a firearm has no merit.

## II

*Admission of the Bullet Found Near the Site of the Robbery*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Hull, J., and Robie, J., concurred.

On June 6, 2011, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 24, 2011, S193684.

---

[*]See footnote, *ante*, page 976.