Filed 12/16/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049413 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 159386) |
| v. | |
| LUIS RAMON MANZANO ARELLANO, | |
| Defendant and Appellant. | |

In this appeal, we consider whether a trial court may include a sentence enhancement in the target offense or underlying felony when redesignating a conviction under Penal Code section 1172.6, subdivision (e).[1]  Based on the relevant statutory language, we conclude it may not.

Defendant Luis Ramon Manzano Arellano (Arellano) appeals from a resentencing after the trial court vacated his second degree murder conviction under former Penal Code section 1170.95 (Stats. 2018, ch. 1015, § 4).[2]  He contends the trial court erred by

---

[1] Unspecified statutory references are to the Penal Code.

[2] In 2021, the Legislature "amended section 1170.95 in several respects, including (1) clarifying that, in some circumstances, the same relief available to persons convicted of murder is also available to persons convicted of attempted murder or manslaughter [citation]; and (2) addressing various aspects of the petition procedure, including the petitioner's right to counsel, the standard for determining the existence of a prima facie case, the burden of proof at the hearing to determine whether a petitioner is entitled to

including within his newly redesignated conviction for attempted robbery a firearm enhancement that had originally been charged with that attempted robbery offense but was dismissed after he pleaded guilty solely to second degree murder. He further contends that the court erred by ordering parole supervision because his excess custody credits satisfied any parole term.

We decide that the trial court erred under section 1172.6, subdivision (e) when it included the firearm enhancement in the redesignated conviction. We therefore reverse the conviction, vacate the sentence, and remand for redesignation of Arellano's vacated murder conviction and resentencing.

## I. FACTS AND PROCEDURAL BACKGROUND

In January 1992, J. Sacramento Benitez was killed during a home burglary and attempted robbery. In September 1992, the Santa Clara County District Attorney filed a second amended felony complaint (complaint) charging Arellano and two codefendants, Arturo Mendoza and Jesus Antonio Mandujano, with murder "with malice aforethought" (Pen. Code, § 187; count 1), attempted robbery (§§ 664, 211, 212.5, subd. (a); count 2), and first degree burglary (§§ 459, 460, subd. (a); count 3). The murder and attempted robbery counts further alleged that each defendant personally used a firearm during the commission of the offense (§§ 12022.5, subd. (a), 1203.06) (firearm enhancement).

In October 1992, prior to a preliminary hearing, the district attorney moved to amend the murder count to "strike 'with malice' " and charge Arellano with second

_____

relief, and the evidence a court may consider at that hearing." (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. omitted; see Stats. 2021, ch. 551, §§ 1, 2, eff. Jan. 1, 2022). In 2022, the Legislature further renumbered section 1170.95 as section 1172.6, with no change to the text of the statute (Stats. 2022, ch. 58, § 10, eff. June 30, 2022). In this opinion we generally refer to the current version of any relevant provisions now codified in section 1172.6. We mention differences between that section and former section 1170.95 as necessary to our analysis. In their appellate briefs, the parties referred to section 1170.95, not 1172.6, and for clarity we sometimes convert their references from section 1170.95 to section 1172.6 when discussing their contentions.

degree murder. Arellano then pleaded guilty to the second degree murder count with certain conditions, including that the firearm enhancement allegation attached to that count would be stricken and counts 2 and 3 of the complaint would be dismissed.

In November 1992, the trial court sentenced Arellano to an indeterminate term of 15 years to life for second degree murder (count 1), concurrent to another sentence that Arellano had been serving for a different case (No. 155635). The court also dismissed the other counts for attempted robbery (count 2) and first degree burglary (count 3).

Twenty-eight years later, in October 2020, Arellano, through counsel, filed a petition for resentencing under then-current section 1170.95 (petition). The district attorney opposed the petition, arguing that Arellano's "bare-bones declaration of eligibility is insufficient pleading for a prima facie case." Arellano's counsel filed a reply, acknowledging that "[t]here were different accounts of who did what" during the "home burglary-robbery that ended in a terrible murder." Counsel attached exhibits to the reply, including an excerpt from a habeas corpus petition that Arellano had filed in 2009 challenging a denial of parole, several police reports describing police interviews of Arellano and his codefendants Mendoza and Mandujano, and a page from an April 2008 "prison psychological evaluation quoting a correctional counselor's report" that described the crime and what the murder victim's sister, Rafaela H., had said about the incident.

In the habeas corpus petition excerpt attached to the reply, Arellano had alleged that "[a]lthough there were a lot [of] conflicting statements by the residents of the residence where the alleged homicide took place, there was no evidence to prove that [he] was there at any given time."

According to the police reports attached to the reply, Arellano made "several conflicting statements" during his police interview about his proximity to the residence at the time of the crime but maintained that he was not present for the attempted robbery. Codefendant Mendoza told the police that he, Mandujano, and Arellano each had guns

during the course of the robbery. Mandujano similarly told the police that he, Mendoza, and Arellano possessed guns during the incident.

According to the attached prison psychological evaluation, a "counselor's report dated December 2002" included, inter alia, the following information about the crime: "According to the victim's sister, four young males had come to her door looking for another address. About one hour later, they came back to her house and rang the doorbell. When she opened the door, Jesus Antonio Mandujano and Ramon Arellano rushed past her. Arturo Mendoza came in next and held a gun to the left side of Benitez's sister. Benitez, the victim, appeared from a rear bedroom, saw what was happening and attempted to get back into the bedroom. Mandujano and Arellano saw Benitez and chased him down the hall with guns in their hands. Benitez attempted to shut the bedroom door[,] but Mandujano and Arellano were pushing against it. Mandujano had his hand, which was holding the .45 caliber handgun between the door and the [doorjamb] and fired one round, which struck Benitez in the shoulder. The three then fled on foot from the scene."

On April 22, 2021, the trial court held a hearing on Arellano's petition. The court ordered the district attorney to show cause why relief should not be granted. In response to that order, the district attorney stated that "the People will be stipulating to a resentencing." The court confirmed with the parties the understanding that the matter would proceed under then-current section 1170.95, subdivision (d)(2).[3] Given the district attorney's concession, the court vacated Arellano's murder conviction, stayed the

---

[3] At that time, section 1170.95, subdivision (d)(2), stated in relevant part: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing." (Stats. 2018, ch. 1015, § 4.) Current section 1172.6, subdivision (d)(2), is nearly identical and does not include any change material to our analysis. That subdivision now states in relevant part: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have the murder, attempted murder, or manslaughter conviction vacated and to be resentenced." (§ 1172.6, subd (d)(2); see also Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

4

execution of that vacatur pending resentencing, and set the matter for further proceedings to redesignate the charge or charges upon which Arellano would be resentenced.

At a hearing held on April 26, 2021, Arellano's defense counsel stated that section "1170.95[, subdivision] (e) stipulates that [Arellano] should be resentenced on the target offense" and the defense had no objection to the district attorney's request that Arellano be resentenced on the originally charged attempted robbery and its attached firearm enhancement (count 2).[4]  The district attorney asked the trial court to exercise its discretion to impose a period of parole supervision for Arellano.

At the April 26, 2021 hearing, the trial court confirmed the parties' agreement as to resentencing Arellano for the attempted robbery offense and the firearm enhancement and referred the matter to the probation department for a presentencing report.  The court explained its understanding of the impending resentencing under then-current section 1170.95 as follows:  "[T]his was a case in which Counts 2 and 3 did reflect what might be considered target offenses for the murder crime in Count No. 1.  Those counts were submitted for dismissal.  The defendant never pled to nor admitted them.  So this is not a situation where statutorily under [section] 1170.95 I'm sentencing on the, quote, remaining counts.  [¶]  What I will be doing is by the agreement of the parties redesignating Count No. 1 to the violations of [sections] 664/211/212.5 subdivision (a) with the enhancement under 12022.5 subdivision (a)."

The district attorney subsequently filed a resentencing brief.  Regarding the facts of the crime, the district attorney asserted, inter alia, the following:  "Based on information provided by witnesses, detectives were able to identify the suspects, along

_____

[4] At that time, section 1170.95, subdivision (e), provided:  "If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes.  Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose."  (Stats. 2018, ch. 1015, § 4.)

5

with a fourth participant who was killed shortly after the crime.  Defendants Jesus Mandujano and Arturo Mendoza told police that Petitioner Arellano was present during the robbery/murder.  [Arellano] told police he knew other individuals were planning to commit the robbery, but that he did not participate.  [Arellano] provided several conflicting statements regarding his whereabouts at the time of the murder."  In addition, the district attorney noted the agreement of the parties concerning the "underlying felony committed by [Arellano]" (i.e., attempted robbery) and "that an arming enhancement pursuant to Penal Code section 12022.5 be imposed."  The district attorney stated that the parties had not reached a stipulation concerning the imposition of any parole supervision under then-current section 1170.95, subdivision (g), and requested that the trial court impose a three-year parole term.[5]

Defense counsel filed two memoranda regarding the impending resentencing—one objecting to the imposition of any parole term, and the other addressing the new sentence.  Regarding parole, Arellano's counsel argued that the trial court had no authority to impose a parole term because Arellano's "years of excess credits far more than offset a 3-year period of parole 'following the completion of the sentence' (under [former § 1170.95,] subd. (g))."  Regarding Arellano's new sentence, counsel reversed course on the agreement to include the firearm enhancement with the attempted robbery offense for redesignation.  Counsel argued that "section 1170.95 does not permit [inclusion of the firearm enhancement], and this Court has no jurisdiction to add what the statute doesn't

---

[5] At that time, section 1170.95, subdivision (g), stated:  "A person who is resentenced pursuant to this section shall be given credit for time served.  The judge may order the petitioner to be subject to parole supervision for up to three years following the completion of the sentence."  (Stats. 2018, ch. 1015, § 4.)

The current parallel subdivision—section 1172.6, subdivision (h)—is identical to the former subdivision in section 1170.95 except that the allowable period of parole is now two years:  "A person who is resentenced pursuant to this section shall be given credit for time served.  The judge may order the petitioner to be subject to parole supervision for up to two years following the completion of the sentence."  (§ 1172.6, subd. (h); see also Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

permit." Counsel further asserted that "[s]ubdivision (e) provides that Mr. Arellano's conviction is to be redesignated as the target offense or underlying felony for resentencing purposes, but it says nothing about adding enhancements that were not previously admitted or found true by a trier of fact." Additionally, counsel argued that including the firearm enhancement would violate Arellano's constitutional rights under *Apprendi v. New Jersey* (2000) 530 U.S. 466.

On May 24, 2021, the trial court held a hearing on redesignation and resentencing. Defense counsel reiterated her position regarding the court's lack of authority to impose the firearm enhancement and asserted that "it isn't clear in the evidence . . . as to whether or not Mr. Arellano possessed a firearm."

The trial court rejected Arellano's argument on the firearm enhancement stating, inter alia: "There are certainly cases, including [*People v. Howard* (2020) 50 Cal.App.5th 727, 739 (*Howard*)], in which the target or underlying crime was not the subject of a verdict or a conviction. And the Court has the authority to redesignate the murder conviction to an appropriate target offense, to properly reflect the defendant-petitioner's individual culpability under the circumstances that have led to the petition itself and is the purpose for which we are here."

The trial court explained further: "[G]iven the fact that there were Penal Code Section 12022.5 subdivision (a) enhancements attached to all three counts against Mr. Arellano in this case [*sic*[6]], given the fact that the Court is going to move forward and resentence him only on . . . what was previously Count 2, even though I think [*People v. Watson* (2021) 64 Cal.App.5th 474 (*Watson*)] would give the Court the ability to sentence him for the burglary as well, given the fact that this was a negotiated disposition in which the firearm enhancement was stricken as opposed to . . . a not true

---

[6] We note that the trial court mistakenly stated that counts 1 through 3 of the complaint each included a firearm enhancement. In fact, only counts 1 and 2 (charging murder and attempted robbery, respectively) had an attached firearm enhancement.

7

finding, and given what the Court does have available to it in the record of conviction regarding the circumstances of the underlying offenses, and it is unfortunate that the stipulation is no longer something the parties can agree upon, but I am going to move forward with resentencing on the attempted robbery charge with the arming allegation pursuant to [section] 12022.5 subdivision (a)." The court also stated that "there is evidence in the record that would suggest that [Arellano] did possess a handgun during the time of the underlying offenses."

After rejecting Arellano's argument against the firearm enhancement, the trial court recalled Arellano's prior sentence for second degree murder and "redesignated Count 1 to allege a violation of Penal Code Section[s] 664/211 and 212.5 [subdivision] (a) with an enhancement pursuant to Penal Code Section 12022.5 [subdivision] (a)." On redesignated count 1, the court sentenced Arellano to a total term of seven years comprising the upper term of three years for the attempted robbery and the middle term of four years for the firearm enhancement. The court found the seven-year prison term was satisfied by time served, calculated as 3,137 actual days of custodial credit.[7]

In addition, the trial court rejected Arellano's argument against imposing a parole term. The court concluded that "excess custodial credit is not to be applied to a period of parole supervision under section 1170.95." The court further concluded that parole supervision was appropriate for Arellano and imposed a three-year period of parole (former § 1170.95, subd. (g)).

On June 7, 2021, Arellano timely filed a notice of appeal from his May 24, 2021 resentencing.

[7] The credits were calculated from the date of Arellano's original sentence in November 1992, up to a 2001 in-custody arrest, which resulted in a conviction in Monterey County for violation of Health and Safety Code section 11352, subdivision (b). Regarding the separate Monterey County judgment (No. SS020954B), the trial court "revisit[ed] the credit for time served" by resentencing Arellano to the same six-year consecutive term that had previously been imposed, granting 7,368 actual days of custodial credit, and deeming the term served.

Later, upon Arellano's motion asserting that a three-year parole term was unauthorized under section 3000.01 (see *People v. Tan* (2021) 68 Cal.App.5th 1, 3–6), the trial court modified its prior order of parole by reducing the period of supervision to two years.

## II. DISCUSSION

Arellano raises two claims challenging the redesignation of his conviction and resentencing. He contends the trial court erred by redesignating the "target offense" of attempted robbery to include the firearm enhancement. Second, he asserts that the trial court erred by placing him on parole because his prison custody credits exceeded his new sentence, and the excess credits should have been applied against the parole term.

We address Arellano's claims in turn.

### A. *Inclusion of Firearm Enhancement for Resentencing*

In his opening brief, Arellano makes several arguments as to why we should reverse the trial court's designation of the firearm enhancement as part of the attempted robbery offense. Specifically, he contends that "[b]ecause this allegation, though initially charged, had been dismissed as part of the plea bargain and thus the truth of which had never been litigated, principles of preclusion and collateral estoppel should have barred it as being part of the target offense. In addition, and more importantly, no admissible evidence was adduced at any of the hearings to support this finding. Further, even if the trial court was entitled to rely on the hearsay attachments to the pleadings as such evidence, the enhancement was not proven beyond a reasonable doubt due to conflicts in the evidence." He further asserts that "[s]ection 1170.95 creates a special proceeding in which a court is strictly limited by its terms" and "the court cannot exceed the parameters of the literal language of the statute."

The Attorney General counters Arellano's various arguments and asserts generally that Arellano's resentencing on the underlying attempted robbery and attached firearm enhancement was proper because, "[i]n crafting section 1170.95, the Legislature

accorded the superior court wide latitude in the redesignation process. . . . Given this wide latitude, [Arellano] is unable to demonstrate error."

After reviewing the parties' briefing, we requested simultaneous supplemental letter briefs addressing the meaning of the phrase "target offense or underlying felony for resentencing purposes" in section 1172.6, subdivision (e), the effect the meaning of that phrase should have on our consideration of this appeal, and how the decision in *Howard*, *supra*, 50 Cal.App.5th 727 should inform any interpretation of that phrase.

       1.  <u>Applicable Legal Principles</u>

In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature "significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) "Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*Id*. at p. 708.) "The purpose of Senate Bill No. 1437 was 'to more equitably sentence offenders in accordance with their involvement in homicides,' and to reduce 'lengthy sentences that are not commensurate with the culpability of the individual.' " (*People v. Machado* (2022) 84 Cal.App.5th 973, 984.)

When the trial court receives a petition under section 1172.6 requesting vacatur of a murder, attempted murder, or manslaughter conviction and resentencing, and "containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' . . . If [] the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong*, *supra*, 13 Cal.5th at p. 708.)

Regarding the process that follows issuance of an order to show cause (OSC), section 1172.6, subdivision (d)(1), provides in relevant part: "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder . . . conviction and to recall the sentence and *resentence the petitioner on any remaining counts* in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1), italics added.)

Under section 1172.6, subdivision (d)(2), the parties may forego the evidentiary hearing by stipulation. That subdivision states in relevant part: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have the murder . . . conviction vacated and to be resentenced." (§ 1172.6, subd. (d)(2).)

If the post-OSC hearing is not waived, the court must hold an evidentiary hearing at which the prosecution bears the burden "to prove beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated *and the petitioner shall be resentenced on the remaining charges*." (*Ibid.*, italics added.)

Additionally, section 1172.6 provides for a petitioner's resentencing by allowing the vacated conviction to be "redesignated as the target offense or underlying felony" under certain circumstances. (§ 1172.6, subd. (e).) Specifically, section 1172.6, subdivision (e), states: "The petitioner's conviction *shall be redesignated as the target offense or underlying felony for resentencing purposes* if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, *and the*

11

*target offense was not charged.* Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose."**8** (*Ibid.*, italics added.)

Regarding statutory construction, " ' " ' "our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " ' [Citation.] ' "[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961 (*Lewis*).)

" ' " 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)

    2.  Analysis

The question before us is one of statutory interpretation, which we review de novo. (*Lewis*, *supra*, 11 Cal.5th at p. 961.)

Arellano argues that neither subdivision (d)(3) nor subdivision (e) of section 1172.6 is, on its face, applicable in the present circumstances. Arellano contends that the resentencing " 'on the remaining charges' " contemplated by section 1172.6, subdivision (d)(3), does not apply because counts 2 (attempted robbery) and 3 (first degree burglary) (and the associated firearm enhancement allegations attached to counts 1 and 2) had been

---

**8** At the time Arellano was resentenced in this case, the parallel provision in former section 1170.95, subdivision (e), read similarly. (See fn. 4, *ante*.)

dismissed by the court pursuant to the plea agreement at Arellano's original sentencing in 1992. Once the court vacated Arellano's sole conviction for murder pursuant to the parties' stipulation of eligibility (§ 1172.6, subd. (d)(2)), there were no " 'remaining charges' " to which he could be resentenced under subdivision (d)(3) of section 1172.6. Subdivision (d)(1) of section 1172.6 similarly describes the resentencing of a petitioner "on any remaining counts." (§ 1172.6, subd. (d)(1).) The language of section 1172.6, subdivision (d)(1) and subdivision (d)(3) thus contemplates resentencing on charges/counts for which the petitioner had been convicted in the original prosecution.

On the other hand, section 1172.6, subdivision (e), provides for a redesignation of the vacated murder conviction to the "target offense or underlying felony" if "murder was charged generically, and the target offense *was not charged*." (§ 1172.6, subd. (e), italics added.)[9] Arellano notes that in the present case, a target offense/underlying felony *was* charged in the complaint, namely, attempted robbery with an attached firearm enhancement allegation (as well as first degree burglary) but had been dismissed. Thus, section 1172.6, subdivision (e), also does not explicitly apply here.

Notwithstanding the statute's failure to speak directly to the circumstances present in this case, as discussed *ante*, the parties and the trial court proceeded with Arellano's resentencing upon the agreement that a redesignation of Arellano's sole, vacated murder conviction to a conviction for attempted robbery could occur under then-current section 1170.95.

---

[9] The phrase "target offense" is typically used in the context of the natural and probable consequences doctrine (see, e.g., *People v. Prettyman* (1996) 14 Cal.4th 248, 266–267) and "underlying felony" is typically used in the context of felony-murder liability (see, e.g., *People v. Cavitt* (2004) 33 Cal.4th 187, 197). (See also *People v. Alaybue* (2020) 51 Cal.App.5th 207, 219 ["The plain language of section 1170.95, subdivision (e) permits the trial court to redesignate the vacated conviction as either 'the target offense,' in cases involving the natural and probable consequences doctrine, or the 'underlying felony,' in cases involving the felony-murder rule."].)

On appeal, neither Arellano nor the Attorney General contend that the trial court was precluded from resentencing Arellano under section 1172.6. We agree with that interpretation of the statute, which avoids a nonsensical circumstance in which a petitioner like Arellano, who is entitled to relief from his murder conviction under section 1172.6 and had originally been charged with a target offense or underlying felony that later was dismissed as part of a plea bargain, could not be resentenced if no other conviction remained extant after vacatur of the murder conviction. (See *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 256; see also *People v. Cook* (2015) 60 Cal.4th 922, 927.)

Further, the parties agree (as do we) that the trial court had the authority under section 1172.6, subdivision (e), to redesignate Arellano's murder conviction using the attempted robbery as the target offense/underlying felony and to resentence Arellano on that crime. Nevertheless, the parties dispute whether subdivision (e) of section 1172.6 permitted the trial court to include the firearm enhancement in the redesignated offense for purposes of resentencing. We turn now to that question.

The Attorney General acknowledges in his supplemental briefing that "section 1172.6, subdivision (e) does not expressly address the trial court's use of sentencing enhancements." Nevertheless, relying on *Howard* and the Legislature's "wish[] for resentenced murder defendants to be held responsible for their non-murderous criminal behavior," the Attorney General contends that "the language 'target offense or underlying felony' reasonably includes enhancements."

In his supplemental briefing, Arellano factually distinguishes the present case from *Howard* (where the petitioner had been convicted by a jury of first degree murder with a felony-murder special circumstance) and states that this appeal "raises questions as to what procedural and constitutional protections a trial court must properly afford a petitioner once it or the prosecutor proposes that a petitioner should be resentenced for any [target offense or offenses]." Further, Arellano notes that *Howard* "seems quite

14

susceptible to criticism in that nothing in [section 1172.6] provides for the addition of enhancements as part of the target offense – previously charged or otherwise. In fact, [the statute] suggests the opposite."

We begin our analysis of the parties' contentions by looking at the words of the statute, focusing on the terms "target offense or underlying felony for resentencing purposes." (§ 1172.6, subd. (e).) Section 1172.6, subdivision (e), neither defines "target offense or underlying felony" nor specifies the process by which the court should identify that offense or felony. In *Howard*, *supra*, 50 Cal.App.5th 727, the Court of Appeal examined the language of former section 1170.95, subdivision (e) (now codified as section 1172.6, subdivision (e)), in the context of an argument that "the trial court was *required* to designate the conviction as second degree burglary—even if the evidence at trial showed a residential burglary—because [the petitioner] was not charged with first degree burglary, the jury was not instructed on that offense, and the jury did not reach a verdict on that charge." (*Id*. at p. 736.) The *Howard* court opined that subdivision (e) "is not ambiguous. . . . The language in subdivision (e) is general, but it is not susceptible to more than one reasonable interpretation." (*Id*. at p. 737, fn. 3.) Further, the court stated, "In the felony murder context, the phrase 'underlying felony' means the offense that was the basis for felony-murder liability at trial." (*Id*. at p. 737.) After concluding that the evidence at trial supported the petitioner's liability for first degree burglary, the court concluded that the language of subdivision (e) "does not direct the court to impose the lesser degree of the felony offense." (*Id*. at p. 738.)

In addition, the court in *Howard* addressed arguments regarding whether the trial court properly designated the first degree burglary conviction as a violent felony (§ 667.5, subd. (c)(21)) and imposed an arming enhancement (§ 12022, subd. (a)(1)). (*Howard*, *supra*, 50 Cal.App.5th at p. 740.) After deciding not to resolve a dispute between the parties regarding whether the trial court had resentenced the petitioner pursuant to section 1170.95, subdivision (d)(1), or (d)(3), the *Howard* court opined as

15

follows: "When the court redesignates the murder conviction as the underlying felony (§ 1170.95, subd. (e)), may the court impose enhancements relative to that felony? As discussed above, section 1170.95 subdivision (e) is silent with respect to how a court resentences a defendant after redesignating the underlying felony. Consistent with the legislative goal of placing [the petitioner] after resentencing in a situation where the murder and any related enhancements no longer exist, [the petitioner]'s resentencing may not include count-specific enhancements *unless* the People establish them related to the underlying felony by evidence presented at the hearing on the section 1170.95 petition. Our conclusion finds support in the principle that '[t]o the extent the court is determining the sentence to impose after striking the murder conviction, the traditional latitude for sentencing hearings should be allowed.' " (*Howard*, at pp. 741–742, quoting Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23.51 (J)(2), p. 23-157.)

Applying this standard, the *Howard* court concluded that "the evidence proven at trial, and recited in [its prior opinion], established beyond any possible dispute" the violent felony designation and the arming enhancement "relative to the underlying felony, burglary." (*Howard*, *supra*, 50 Cal.App.5th at p. 742.) The *Howard* court further observed that "[w]hen a court resentences a defendant pursuant to section 1170.95, the only limitation is the new sentence cannot be greater than the original sentence. (§ 1170.95, subd. (d)(1).) . . . [T]he purpose of section 1170.95 is to punish a defendant commensurate with his individual culpability. . . . Designating [the petitioner]'s burglary conviction a violent felony, and imposing the arming enhancement, furthers the purpose of the statute." (*Ibid.*) Additionally, the court rejected the petitioner's arguments regarding the fact that "the violent felony designation was not alleged and proven at trial, and that the arming enhancement was not found true as to burglary, because the prosecution did not charge him with that offense." (*Ibid.*) The court noted that "section 1170.95, subdivision (e) contemplates a situation where the underlying felony is not charged, and the court redesignates the offense," so imposing the enhancements did not

16

involve a " 're-open[ing] the charging stage of the case' " and petitioner's resentencing was done "pursuant to an ameliorative statute that authorized the court to resentence [him] 'as if [he] had not been previously . . . sentenced.' (§ 1170.95, subd. (d)(1).)" (*Ibid*.)

Relatedly, in *Watson*, *supra*, 64 Cal.App.5th 474, the Court of Appeal considered whether the trial court was authorized under former section 1170.95, subdivision (e), to designate the conviction as two offenses underlying the petitioner's felony-murder liability. (*Id*. at p. 483.) The court "agree[d] with the *Howard* court's reasoning that reading section 1170.95, subdivisions (d)(3) and (e) together reflects a legislative intent to grant trial courts flexibility in designating the underlying offense for resentencing purposes." (*Id*. at p. 488.) The court "conclude[d] that the language of subdivision (e), viewed in context with the other subdivisions of section 1170.95, does not support [the petitioner]'s construction that the court was required to designate only one underlying felony" when resentencing petitioner. (*Id*. at p. 490; accord *People v. Silva* (2021) 72 Cal.App.5th 505, 529–532.)

We accept the *Howard* court's conclusion that the language now included in section 1172.6, subdivision (e), is unambiguous and the phrase " 'underlying felony' " "means the offense that was the basis for felony-murder liability." (*Howard*, *supra*, 50 Cal.App.5th at p. 737.) Nevertheless, we respectfully disagree with the *Howard* court's conclusion that "section 1170.95, subdivision (e) is silent with respect to how a court resentences a defendant after redesignating the underlying felony" (*id*. at p. 741) and thus permits a trial court to impose related enhancements when resentencing on the redesignated conviction of " 'the target offense or underlying felony.' " (*Id*. at pp. 736, 740–742.) In our view, the plain meaning of the phrase "[t]he petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes" in section 1172.6, subdivision (e), does not authorize enhancements to be attached to the redesignated conviction for resentencing.

17

We begin by analyzing the meaning of the phrase "target offense or underlying felony" (§ 1172.6, subd. (e)) to decide whether that phrase incorporates a sentence enhancement such as that alleged in this case under section 12022.5, subdivision (a), which "provides a sentence enhancement for personal use of a firearm during a felony." (*People v. Law* (2011) 195 Cal.App.4th 976, 982; see also *People v. Rodriguez* (2009) 47 Cal.4th 501, 508; *People v. Coronado* (1995) 12 Cal.4th 145, 157, fn. 8.)

In accord with *Howard*, we interpret "target offense or underlying felony" to mean the "offense" upon which liability was based for either the natural and probable consequences doctrine or the felony-murder rule. Although the Penal Code does not otherwise define the term "offense," it does define "public offense." Section 15 provides: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or, [¶] 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State." (§ 15.) Our Penal Code states further, in section 16, that "[c]rimes and public offenses include: [¶] 1. Felonies; [¶] 2. Misdemeanors; and [¶] 3. Infractions." (§ 16.) In addition, the Penal Code provides that "[t]he accusatory pleading must contain: [¶] . . . [¶] [] [a] statement of the public offense or offenses charged therein." (§ 950.) "In charging an offense, each count [of the accusatory pleading] shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified." (§ 952.)

By contrast, "a sentence enhancement is 'an additional term of imprisonment added to the base term.' " (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 898.) Moreover, "California courts have consistently stated that 'section 12022.5 does not prescribe a new offense but merely additional punishment for an offense in which a firearm is used.' " (*People v. Wolcott* (1983) 34 Cal.3d 92, 100.) In the same vein, our Supreme Court has explained: "Enhancements . . . are not substantive crimes.

18

[Citation.] California courts have long recognized that an enhancement is not a separate crime or offense. [Citation.] . . . '[I]n our statutory scheme sentence enhancements are not "equivalent" to, nor do they "function" as, substantive offenses. Most fundamentally, a sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense. [Citation.] . . . The Legislature, moreover, has in various ways expressed its intention that enhancements not be treated as substantive offenses.' " (*People v. Dennis* (1998) 17 Cal.4th 468, 500; see also § 1170.1, subd. (e).)

By directing that the vacated conviction shall be redesignated only "as the target offense or underlying felony for resentencing purposes" (§ 1172.6, subd. (e)) and failing to mention sentence enhancements, the Legislature spoke to both redesignation of the conviction and resentencing for that conviction. That is, through the specific language it chose for section 1172.6, subdivision (e), the Legislature stated that "for resentencing purposes," the newly redesignated conviction shall include only the offense upon which liability for murder or attempted murder was based.

Although this interpretation of section 1172.6, subdivision (e), limits resentencing to the target offense or underlying felony, such interpretation does not result in absurd consequences the Legislature did not intend. It simply limits a petitioner's exposure in a relatively definite manner to only a specific offense and avoids the complexities that could arise in deciding which of the myriad sentencing enhancements in our penal law might be applicable to a particular factual scenario. Given that subdivision (e) applies when "the target offense was not charged," the Legislature reasonably could have intended to limit a petitioner's potential punishment in this conditional and uncertain circumstance.

The text of section 1172.6, subdivision (d) confirms our reading of subdivision (e). "Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning." (*Briggs v. Eden*

19

*Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) In subdivision (d)(3) of section 1172.6, the Legislature specifically mentioned "enhancements attached to the [prior] conviction" when mandating vacatur if the prosecution fails to sustain its burden at a hearing under that subdivision to prove a petitioner's guilt of murder or attempted murder under amended section 188 or 189. Subdivision (d)(3) thus evinces the Legislature's awareness of the difference between a conviction for an offense and an enhancement attached to the conviction. In addition, the Legislature's use of the terms "any remaining counts" and "the remaining charges" in subdivision (d)(1) and (d)(3), when contrasted against the more specific phrase "target offense or underlying felony" in subdivision (e), suggests that the Legislature intended the redesignation and resentencing under subdivision (e) to be narrower than any resentencing that would occur when there are remaining counts or charges (which would include any attached sentence enhancements) after the murder, attempted murder, or manslaughter conviction is vacated under section 1172.6.

Given the settled distinction in our penal law between an "offense" and a sentence enhancement and the statutory framework of section 1172.6 as a whole, we conclude that the phrase "target offense or underlying felony" in section 1172.6, subdivision (e), does not authorize a court to include a sentence enhancement when it redesignates a vacated conviction as the target offense or underlying felony for resentencing purposes under that subdivision.[10] Because the trial court redesignated Arellano's conviction and resentenced

---

[10] We note that in *People v. Gonzales* (2021) 65 Cal.App.5th 1167, the Court of Appeal approved attaching a gang allegation (§ 186.22, subd. (b)(1)) to a redesignated simple battery offense (§ 242). But the *Gonzales* court was not called upon to decide, and did not decide, whether section 1172.6, subdivision (e), authorizes such an enhancement. Rather, the court addressed an issue whether adding an enhancement that did not exist when the defendant was originally convicted violated ex post facto and due process principles. (See *Gonzales*, at pp. 1172–1174.) *Gonzales* therefore does not stand for the proposition that section 1172.6, subdivision (e), authorizes inclusion of a sentence enhancement.

20

him under the purview of section 1172.6, subdivision (e), it could not properly include the firearm enhancement (§ 12022.5, subd. (a)) in Arellano's new conviction and sentence.

We thus reverse Arellano's redesignated conviction on count 1 and remand the matter for further proceedings to redesignate Arellano's vacated murder conviction as a conviction of the underlying felony and resentence him. We leave it to the trial court and parties on remand to determine whether the underlying felony for resentencing purposes should comprise either or both attempted robbery and first degree burglary.[11]

Considering the difference between our interpretation of section 1172.6, subdivision (e), and that of the *Howard* court (*Howard*, *supra*, 50 Cal.App.5th at pp. 741–742), we respectfully invite the Legislature to review the statutory scheme and clarify whether this subdivision (1) applies to crimes that were originally charged but dismissed prior to the original murder conviction and (2) authorizes a court to include sentence enhancements when resentencing on a target offense or underlying felony.

B. *Imposition of Parole Supervision*

For the benefit of the parties and the trial court on remand, we address Arellano's contention that the trial court improperly imposed a parole term, instead of applying excess credits to satisfy the entirety of the parole term.

As Arellano acknowledges, other Courts of Appeal have rejected similar arguments. (See *People v. Lamoureux* (2020) 57 Cal.App.5th 136, 145; *People v. Wilson* (2020) 53 Cal.App.5th 42, 52.) Considering those decisions, we are not persuaded by Arellano's claim. We thus conclude that the trial court did not err by ordering Arellano to complete a parole term upon his custodial release (see § 1172.6, subd. (h); former § 1170.95, subd. (g)).

---

[11] In light of this conclusion, we do not reach Arellano's other arguments challenging the inclusion of the firearm enhancement in his redesignated conviction.

21

## III.  DISPOSITION

The judgment is reversed, and the matter is remanded for redesignation of Arellano's vacated murder conviction and resentencing consistent with this opinion.

_____
                    Danner, J.

WE CONCUR:



_____
Bamattre-Manoukian, Acting P.J.




_____
Wilson, J.




**H049413**
*People v. Arellano*

Trial Court:     County of Santa Clara

Trial Judge:     Hon. Daniel T. Nishigaya

Counsel:     Peter F. Goldscheider, by appointment of the Court of Appeal under the
          Sixth District Appellate Program, for Defendant and Appellant.

          Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney
          General, Charles C. Ragland, Senior Assistant Attorney General,
          Arlene A. Sevidal, Supervising Deputy Attorney General and James
          H. Flaherty III, Deputy Attorney General, for Plaintiff and
          Respondent.

**H049413**
*People v. Arellano*